UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALEJANDRO BALTODANO,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>PAMELA BONDI *et al.*,<br><br>　　　　　Respondents. | Case No. C25-1958RSL<br><br>TEMPORARY<br>RESTRAINING ORDER |

This matter comes before the Court on petitioner's motion for temporary restraining order (Dkt. # 9). Having considered the motion, the Government's response[1] (Dkt. # 12), the declaration of Daniel Strzelczyk (Dkt. # 13), and the record herein, the Court GRANTS IN PART AND DENIES IN PART petitioner's motion for temporary restraining order.

---

[1] The Court notes that in the Government's response, the Government states that "Respondent Bruce Scott is not a Federal Respondent and is not represented by the U.S. Attorney's office." Dkt. # 12 at 4, n.1. Respondent Bruce Scott did not file a notice in response to petitioner's motion for TRO as required under LCR 65(b)(5). The Court directs both parties to make every effort to ensure that respondent Bruce Scott, identified by petitioner as "Warden of Immigration Detention Facility," is notified of this TRO immediately.

TEMPORARY RESTRAINING ORDER - 1

## I. Background

Petitioner Alejandro Francisco Baltodano is a native and citizen of Nicaragua. Dkt. # 7, Ex. 1 at 1. He was originally ordered deported on November 14, 2018. *Id.* Petitioner's deportation followed a determination by a United States Immigration Judge ("IJ") that petitioner had committed a particularly serious crime and was therefore ineligible for most forms of relief from deportation. Dkt. # 13 at ¶ 4. The Government states that petitioner has an "extensive and dangerous criminal history," with twenty-four convictions between Sept. 2010 and June 2016 for crimes including robbery, assault, burglary, cruelty toward a child, and domestic violence. Dkt. # 12 at 6. The Government believes that petitioner reentered the United States "without inspection or parole . . . on or about January 7, 2024." Dkt. # 13 at ¶ 5. He was "encountered by a U.S. Border Patrol agent on or about January 8, 2024 and processed for reinstatement of the prior removal order." *Id*. at ¶ 6. On March 5, 2025, an IJ granted petitioner deferral of removal under the Convention Against Torture, finding that petitioner "has established that he experienced past torture at the hands of the Nicaraguan government and that he faces a more than fifty percent likelihood of experiencing torture at the hands of the Nicaraguan government or with its acquiescence upon return." Dkt. # 7, Ex. 1 at 12. Petitioner states that he has been in the custody of Immigration and Customs Enforcement (ICE) for about 20 months and is detained at the Northwest ICE Processing Center. Dkt. # 7 at 2–3. He is currently seeking a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his detention for more than six months "violates the Fifth Amendment's Due Process Clause and 8 U.S.C. § 1231 as interpreted by *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001)." Dkt. # 9 at 1.

Petitioner's efforts to obtain a writ of habeas corpus under 28 U.S.C. § 2241 began on Oct. 9, 2025. Dkt. # 1. On Oct. 10, 2025, Magistrate Judge Michelle L. Peterson issued an order effecting service. Dkt. # 6. That order confirms that all respondents have now been served with the petition. *Id*. *See also* Dkt. # 7. In a signed declaration, petitioner's immigration attorney states that on Oct. 17, 2025, she was called by an officer at the Northwest Immigration Processing Center and told that ICE was seeking to deport petitioner to a third country. Dkt. # 9, Ex. 1. On Oct. 20, 2025, petitioner filed his motion for temporary restraining order ("TRO") asking this Court to, among other things, prevent petitioner's removal to a third country. Dkt. # 9. On October 22, 2025, the Government filed a response and a declaration from Daniel Strzelczyk, a deportation officer employed by the United States Department of Homeland Security. Dkts. # 12, 13. The Government's response confirms that "ICE intends to remove [petitioner] to a third country." Dkt. # 12 at 11:19–23. It also states that on October 21, 2025, petitioner was served written notice of ICE's intent to remove him to Honduras. *Id*. In addition, the Government "anticipates serving [petitioner] written notice of intent to remove him to Mexico." *Id*.

**II.    Discussion**

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A motion for TRO may be granted only if the moving party establishes "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public

TEMPORARY RESTRAINING ORDER - 3

interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "All four elements must be satisfied." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022). The factors are evaluated on a "sliding scale," however, meaning that "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The Ninth Circuit has repeatedly held that "when the balance of hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only 'serious questions going to the merits.'" *hiQ Labs*, 31 F.4th 1180 at 1188 (9th Cir. 2022) (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1135 (9th Cir. 2011)).

### A. Likelihood of Success on the Merits

Petitioner contends ICE's current policy on third country removals "skips over" essential "statutory and constitutional procedural protections" in that it allows removal to third countries "without the need for further procedures" so long as the United States has received "diplomatic assurances" from a third country that the individual to be removed will not be persecuted or tortured in the third country *and* the Department of State "believes those assurances to be credible." Dkt. # 9 at 7:24 (Citing ICE, *Third Country Removals Following the Supreme Court's Order in Department of Homeland Security v. D.V.D., No. 24A1153 (U.S. June 23, 2025)* (July 9, 2025), https://storage.courtlistener.com/recap/gov.uscourts.mad.282404/gov.uscourts.mad.282404.190.1.pdf [https://perma.cc/L9Y2-6CYX]). *See also Nguyen v. Scott*, No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *7 (W.D. Wash. Aug. 21, 2025) (describing the "ICE Policy Regarding Removal to Third Countries"). Courts in this district have recently found that challenges to

TEMPORARY RESTRAINING ORDER - 4

1  ICE's policy on third country removals are likely to succeed on the merits. *See Nguyen*, No.

2  2:25-CV-01398-TMC, 2025 WL 2419288 at *19 (W.D. Wash. Aug. 21, 2025) (finding

3  petitioner was "likely to succeed on his claim that removal to a third country under ICE's

4  current policy, without meaningful notice and reopening of his removal proceedings for a

5  hearing, would violate due process"); *J.R. v. Bostock*, No. 2:25-CV-01161-JNW, 2025 WL

6  1810210, at *3 (W.D. Wash. June 30, 2025) (finding the first *Winter* factor met where petitioner

7  raised serious questions as to whether his due process rights were violated by the Government's

8  attempt at third-country removal without adequate notice as to which country petitioner might

9  be removed to); *Phetsadakone v. Scott*, No. 2:25-CV-01678-JNW, 2025 WL 2579569, at *4

10 (W.D. Wash. Sept. 5, 2025); *Phaymany v. Northwest Immigration and Customs Enforcement

11 Processing Center*, 2:25-cv-00854-RAJ-MLP (W.D. Wash. Sept. 25, 2025).

   In *Nguyen*, the court found that ICE's current third country removal policy "contravenes

   Ninth Circuit law." No. 2:25-CV-01398-TMC, 2025 WL 2419288 at *19 (W.D. Wash. Aug. 21,

   2025). The *Nguyen* court also found that a "noncitizen must be given sufficient notice of a

   country of deportation that, given his capacities and circumstances, he would have a reasonable

   opportunity to raise and pursue his claim for withholding of deportation." *Id*. at *18 (quoting

   *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)). This is exactly what petitioner

   argues is being denied him by ICE's current third country removal policy. Dkt. # 9 at 5:13–8:21.

   The Government argues petitioner is not likely to succeed on the merits here because,

   among other things, the Government states it will not attempt to remove petitioner to Honduras

   or Mexico if he files a motion to reopen his immigration case based on fear of removal to

TEMPORARY RESTRAINING ORDER - 5

Honduras or Mexico and that motion is pending. Dkt. # 12 at 12:2–4. However, in *Nguyen* the court found that due process with regard to threatened third country removal is not satisfied "by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held." No. 2:25-CV-01398-TMC, 2025 WL 2419288 at *18 (W.D. Wash. Aug. 21, 2025) (citing *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1011 (W.D. Wash. 2019)). Therefore, this Court finds petitioner is likely to succeed on the merits of his claim that he is entitled to "legally required multistep procedures set out in 8 U.S.C. § 1231(b) and required by due process" before ICE can remove him to a third country. *Id*.

### B. Irreparable Harm

Here, as in *Nguyen*, by citing "ICE's own policy" petitioner has:

> [S]hown that he will suffer irreparable harm in the absence of an injunction barring his removal to a third country. It is beyond dispute that Petitioner would face irreparable harm from removal to a third country. *A.A.R.P. v. Trump*, –––– U.S. ––––, 145 S. Ct. at 1364, 1367, 221 L.Ed.2d 765 (2025) (detainees with pending habeas petitions facing removal under Alien Enemies Act faced "an imminent threat of severe, irreparable harm"). And Petitioner has demonstrated that his removal to a third country is an "immediate threatened injury[.]" *Caribbean Marine Servs.,* 844 F.2d at 674.

No. 2:25-CV-01398, 2025 WL 2419288 at *26 (W.D. Wash. Aug. 21, 2025). In addition, "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "When the alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."

TEMPORARY RESTRAINING ORDER - 6

*Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 2004)). Thus, petitioner here has shown irreparable harm. *See Phaymany*, 2:25-cv-00854-RAJ-MLP (W.D. Wash. Sept. 25, 2025).

### C. Balance of Equities and Public Interest

The final *Winter* factors, the balance of equities and the public interest, merge when the Government is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). As relevant here:

> "There is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009). While there is a countervailing interest in execution of final removal orders, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Nguyen*, 2025 WL 2419288, at *28 (quoting *Ala. Ass'n of Realtors v. Dep't of Health and Human Servs.*, 594 U.S. 758, 766 (2021)).

*Phaymany*, 2:25-cv-00854-RAJ-MLP (W.D. Wash. Sept. 25, 2025). Thus, the final two *Winter* factors weigh in favor of petitioner, with the balance of equities tipping sharply in his favor.

In addition, the Court finds that under these circumstances it is important to act swiftly to preserve its jurisdiction to adjudicate both the present motion for TRO and the underlying petition. *See Phaymany*, 2:25-cv-00854-RAJ-MLP (W.D. Wash. Sept. 25, 2025). *See also A.A.R.P. v. Trump*, 605 U.S. 91 at 93 (2025) (granting temporary order not to remove class members "in order to preserve our jurisdiction and consider the application."). This finding is supported by recent experience. In an immigration appeal the Court recently sat on by designation for the Ninth Circuit Court of Appeals, No. 24-1018, *Johan Soto Cedeno v. Pamela*

TEMPORARY RESTRAINING ORDER - 7

*Bondi*, a temporary stay of removal was issued by the Ninth Circuit while the panel deliberated on the petition from Mr. Soto Cedeno seeking review of an IJ's order that he be removed. *Id*. at Dkts. # 6, 15. Before the panel had reached a decision on Mr. Soto Cedeno's appeal, the panel was advised by the Government that despite the Ninth Circuit's stay of removal, Mr. Soto Cedeno has been deported to Venezuela. *Id*. at Dkt. # 40. ICE was involved in events leading up to Mr. Soto Cedeno's deportation and the Government has since explained that Mr. Soto Cedeno's deportation was a result of "administrative error." *Id.* at Dkt. # 46. In response, the panel—which includes Ninth Circuit Judges Ryan D. Nelson and Richard Paez—found that "[t]he Government's violation of the court's order warrants a finding of civil contempt" but temporarily deferred a contempt ruling and ordered the Government to facilitate Mr. Soto Cedeno's return. *Id*. at Dkt. # 49. Mr. Soto Cedeno has yet to return. Here, if the Court did not enter a TRO prohibiting petitioner's removal to a third country, the Court could be deprived of its jurisdiction through an "administrative error" deportation notwithstanding the Government's representations that it will provide petitioner some—albeit insufficient, as discussed above—due process.

### D. Petitioner's Request for Immediate Release and a Finding that the Third Country Removal Program "Is Punitive"

The Court denies petitioner's request that the Court order his immediate release from custody. *See Nguyen*, No. 2:25-CV-01398-TMC, 2025 WL 2165995 at *7 (W.D. Wash. July 30, 2025) ("Because Petitioner's request for release from detention is the same relief ultimately sought by his habeas petition, the Court concludes that it falls outside the limited purpose of a

TEMPORARY RESTRAINING ORDER - 8

TRO and should instead be decided either after a preliminary injunction hearing or through regular adjudication of the habeas petition itself."). In addition, the Court is not ruling on petitioner's request that the Government be temporarily barred from deporting him due to the "punitive" nature of the third country removal program (*see* Dkt. # 9 at 8:22, 9:2) because the temporary relief requested is being granted on other grounds.

### III.    Conclusion

For all the foregoing reasons, petitioner's motion for temporary restraining order (Dkt. # 9) is GRANTED IN PART AND DENIED IN PART as follows:

(1) The Court ORDERS that all respondents and all their officers, agents, servants, employees, attorneys, and persons acting on their behalf in concert or in participation with them, are prohibited from removing petitioner to a third country without notice and a meaningful opportunity to respond in compliance with statute and due process in reopened removal proceedings; and

(2) The Court DENIES petitioner's request for a temporary restraining order directing petitioner's immediate release.

Petitioner is directed to file a brief on any requested preliminary injunction by Wednesday, October 29, 2025, at noon. Respondents may file a response by Monday, November 3, 2025, at noon. Petitioner may then file a reply by Wednesday, November 5, 2025, at noon. The Court sets a preliminary injunction hearing for Thursday, November 6, 2025, at 9 a.m.

IT IS SO ORDERED.

TEMPORARY RESTRAINING ORDER - 9

DATED this 23rd day of October, 2025.

                                                */s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

TEMPORARY RESTRAINING ORDER - 10