UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALEJANDRO BALTODANO,<br><br>               Petitioner,<br><br>            v.<br><br>PAMELA BONDI *et al.*,<br><br>              Respondents. | Case No. C25-1958RSL<br><br>PRELIMINARY INJUNCTION |

This matter comes before the Court on petitioner's motion for preliminary injunction (Dkt. # 15). Having considered the motion; the Government's response[1] (Dkt. # 16); petitioner's reply (Dkt. # 18); the declaration of Kristin B. Johnson (Dkt. # 17); the parties' oral arguments at the Nov. 6, 2025, preliminary injunction hearing; petitioner's supplemental briefing requested by the Court (Dkt. # 20); and the record herein, the Court GRANTS IN PART AND DENIES IN PART petitioner's motion for preliminary injunction.

---

[1] The Court notes that in the Government's response, the Government again states that "Respondent Bruce Scott is not a Federal Respondent and is not represented by the U.S. Attorney's office." Dkt. # 16 at 4, n.1. To date, respondent Bruce Scott has not appeared in this matter. The Court directs both parties to make every effort to ensure that respondent Bruce Scott, identified by petitioner as "Warden of Immigration Detention Facility," is notified of this preliminary injunction immediately.

PRELIMINARY INJUNCTION - 1

## I. Background

Petitioner Alejandro Francisco Baltodano is a native and citizen of Nicaragua. Dkt. # 7, Ex. 1 at 1. He is 47 years old. Dkt. # 20. Petitioner was originally ordered deported on November 14, 2018. Dkt. # 7, Ex. 1 at 1. His deportation followed a determination by a United States Immigration Judge ("IJ") that petitioner had committed a particularly serious crime and was therefore ineligible for most forms of relief from deportation. Dkt. # 13 at ¶ 4. The Government states that petitioner has an "extensive and dangerous criminal history," with twenty-four convictions between Sept. 2010 and June 2016 for crimes including robbery, assault, burglary, cruelty toward a child, and domestic violence. Dkt. # 12 at 6.

The Government believes that petitioner reentered the United States "without inspection or parole . . . on or about January 7, 2024." Dkt. # 13 at ¶ 5. He was "encountered by a U.S. Border Patrol agent on or about January 8, 2024 and processed for reinstatement of the prior removal order." *Id*. at ¶ 6. On March 5, 2025, an IJ granted petitioner deferral of removal under the Convention Against Torture, finding that petitioner "has established that he experienced past torture at the hands of the Nicaraguan government and that he faces a more than fifty percent likelihood of experiencing torture at the hands of the Nicaraguan government or with its acquiescence upon return." Dkt. # 7, Ex. 1 at 12. Petitioner states that he has been in the custody of Immigration and Customs Enforcement (ICE) for about 20 months and is detained at the Northwest ICE Processing Center. Dkt. # 7 at 2–3. He is currently seeking a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his detention for more than six months "violates the

PRELIMINARY INJUNCTION - 2

Fifth Amendment's Due Process Clause and 8 U.S.C. § 1231 as interpreted by *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001)." Dkt. # 9 at 1.

Petitioner's efforts to obtain a writ of habeas corpus under 28 U.S.C. § 2241 began on Oct. 9, 2025. Dkt. # 1. In a signed declaration, petitioner's immigration attorney states that on Oct. 17, 2025, she was called by an officer at the Northwest Immigration Processing Center and told that ICE was seeking to deport petitioner to a third country. Dkt. # 9, Ex. 1. On Oct. 20, 2025, petitioner filed a motion for temporary restraining order ("TRO") asking this Court to, among other things, prevent petitioner's removal to a third country. Dkt. # 9. On October 22, 2025, the Government filed a response and a declaration from Daniel Strzelczyk, a deportation officer employed by the United States Department of Homeland Security. Dkts. # 12, 13. The Government's response confirmed that "ICE intends to remove [petitioner] to a third country." Dkt. # 12 at 11:19–23. It also stated that on October 21, 2025, petitioner was served written notice of ICE's intent to remove him to Honduras. *Id*. On Oct. 23, 2025, this Court granted in part and denied in part petitioner's motion for TRO. Dkt. # 14.

In briefing on this preliminary injunction, the Government again stated that it intends to remove petitioner to a third country. Dkt. # 16 at 7:10. The Government maintains that petitioner has been served written notice of the Government's intent to remove him to Honduras and, in addition, the Government "anticipates also serving [petitioner] written notice of intent to remove him to Mexico." Dkt. # 16 at 7:11–14. The Court held a hearing on petitioner's motion for preliminary injunction on Nov. 6, 2025. Dkt. # 19.

PRELIMINARY INJUNCTION - 3

## II. Discussion

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a preliminary injunction must establish the (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Id.* at 20. Plaintiff must make a showing on all four *Winter* prongs. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). However, when there are "serious questions going to the merits" and the balance of hardships tips sharply toward the plaintiff, that "can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*.

Although it is "controversial," the Ninth Circuit has "separate standards for prohibitory and mandatory injunctions." *Hernandez v. Sessions*, 872 F.3d 976, 997 (9th Cir. 2017). A prohibitory injunction "prohibits a party from taking action and 'preserve[s] the status quo pending a determination of the action on the merits.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–9 (citing *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988)). Injunctions preventing future constitutional violations are "a classic form of prohibitory injunction." *Hernandez*, 872 F.3d 976 at 998 (9th Cir. 2017). A mandatory injunction orders a responsible party to take action, goes well beyond simply maintaining the status quo pedente lite, and is "particularly disfavored." *Nutraceuticals*, 571 F.3d 873, 878–9

PRELIMINARY INJUNCTION - 4

<sub>
</sub>

(9th Cir. 1988) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)). "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Id*. (quoting *Anderson*, 612 F.2d 1112 at 1115 (9th Cir. 1980)). "Mandatory injunctions are most likely to be appropriate when 'the status quo . . . is exactly what will inflict the irreparable injury upon complainant.'" *Hernandez*, 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 830 n.21 (D.C. Cir. 1984)).

### A. Type of Relief Requested

Petitioner seeks a preliminary injunction "barring Respondents from removing Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings." Dkt. # 15 at 2. The Court finds this would be "a classic form of prohibitory injunction." Dkt. # 15 at 2; *Hernandez*, 872 F.3d 976 at 998 (9th Cir. 2017); *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009–11 (W.D. Wash. 2019). Petitioner also seeks a preliminary injunction ordering his "immediate release from custody while this case is litigated" pursuant to *Zadvydas*, 533 U.S. 678 at 689 (2001). Dkt. # 15 at 2. The Court finds that where, as here, petitioner was not on supervised release prior to his detention, a preliminary injunction ordering petitioner's immediate release pursuant to *Zadvydas* would be a mandatory injunction. Dkt. # 15 at 2; *Nguyen v. Scott*, No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *10 (W.D. Wash. Aug. 21, 2025). Finally, petitioner seeks a preliminary injunction barring respondents "from removing Petitioner to any third country because

PRELIMINARY INJUNCTION - 5

Respondents' third-country removal program is punitive." The Court finds this would be "a classic form of prohibitory injunction." Dkt. # 15 at 2; *Hernandez*, 872 F.3d 976 at 998 (9th Cir. 2017); *Nguyen*, No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *23–25 (W.D. Wash. Aug. 21, 2025) (citing *Wong Wing v. United States*, 163 U.S. 228 (1896) and *Zadvydas*, 553 U.S. 678 at 693–94 (2001)).

### B. Petitioner's Ability to Seek Relief

The Government contends this Court "may not issue the relief sought by Baltodano because he is a member of the plaintiff class in *D.V.D. v. Dep't Homeland Sec.*, 778 F.Supp.3d (D. Mass. Apr. 18, 2025)." Dkt. # 16 at 3:23–4:1.

> The plaintiff class in *D.V.D.* sought and received an injunction barring U.S. Immigration and Customs Enforcement ("ICE") from removing members of the class to third countries. That injunction was stayed by two orders of the Supreme Court. Baltodano cannot end-run the Supreme Court's stay of an injunction barring his removal to a third country by seeking the same relief in a different court . . .
>
> Simply put, Baltodano is not entitled to another bite at the apply before this Court to obtain relief that has already been stayed by the Supreme Court.

*Id*. at 4:1–5, 14:9–10. The Government made the same argument in *Nguyen*. No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *20–23 (W.D. Wash. Aug. 21, 2025). In fact, here the Government's briefing on this topic is almost word-for-word identical to the Government's briefing on this topic in *Nguyen*. *Compare* No. 2:25-CV-01398-TMC, Dkt. # 17 at 17–20 *with* No. 2:25-CV-01958-RSL, Dkt. # 16 at 14–16. This Court therefore adopts the *Nguyen* court's detailed and thoughtful analysis of this issue and the *Nguyen* court's findings that (1) "The class certification order in *D.V.D.* does not prevent this

PRELIMINARY INJUNCTION - 6

Court from adjudicating Petitioner's claims regarding third-country removal" and (2) "The emergency docket order in *D.V.D.* does not preclude the Court from granting a preliminary injunction here." No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *20–23 (W.D. Wash. Aug. 21, 2025).

### C. Likelihood of Success on the Merits

#### 1. Due Process

In 2019, this Court held that a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden*, 409 F. Supp. 3d 998 at 1009–11 (W.D. Wash. 2019). Citing both the due process clause and the relevant statute, this Court also held that "[g]iving petitioner an opportunity to file a motion to reopen [his removal proceedings] . . . is not an adequate substitute for the process that is due process in these circumstances." *Id*. Rather, a petitioner must be able to pursue his claim for withholding of deportation in *reopened* removal proceedings before an immigration judge. *Id*. In August the *Nguyen* court, noting that this Court's holdings in *Aden* "flow directly from binding Ninth Circuit precedent," held that ICE's current policy on third country removals "contravenes Ninth Circuit law." *Nguyen*, No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *18–19 (W.D. Wash. Aug. 21, 2025). *See also* Dkt. # 15 at 2–3 (quoting ICE, *Third Country Removals Following the Supreme Court's Order in Department of Homeland Security v. D.V.D., No. 24A1153 (U.S. June 23, 2025)* (July 9, 2025),

PRELIMINARY INJUNCTION - 7

https://storage.courtlistener.com/recap/gov.uscourts.mad.282404/gov.uscourts.mad.282404.190.1.pdf [https://perma.cc/L9Y2-6CYX]).

Courts in this district have recently found that challenges to ICE's policy on third country removals are likely to succeed on the merits. *See Nguyen*, No. 2:25-CV-01398-TMC, 2025 WL 2419288 at *19 (W.D. Wash. Aug. 21, 2025) (finding petitioner was "likely to succeed on his claim that removal to a third country under ICE's current policy, without meaningful notice and reopening of his removal proceedings for a hearing, would violate due process"); *J.R. v. Bostock*, No. 2:25-CV-01161-JNW, 2025 WL 1810210, at *3 (W.D. Wash. June 30, 2025) (finding the first *Winter* factor met where petitioner raised serious questions as to whether his due process rights were violated by the Government's attempt at third-country removal without adequate notice as to which country petitioner might be removed to); *Phetsadakone v. Scott*, No. 2:25-CV-01678-JNW, 2025 WL 2579569, at *4 (W.D. Wash. Sept. 5, 2025); *Phaymany v. Northwest Immigration and Customs Enforcement Processing Center*, 2:25-cv-00854-RAJ-MLP (W.D. Wash. Sept. 25, 2025).

The Government states that it has served petitioner with written notice of the Government's intent to remove him to Honduras and "anticipates" serving him with written notice of intent to remove him to Mexico, but these notices are not in the record, nor is there any record relating to permission or travel documents from Honduras or Mexico. Dkts. # 16 at 7, 18 at 4:25–5:13. The Government states that it "will not attempt to remove [petitioner] if a motion to reopen is pending" based on petitioner's fear of removal to Honduras or Mexico, but this voluntary promise as to Honduras and Mexico is not a categorical promise to allow petitioner

PRELIMINARY INJUNCTION - 8

sufficient time to challenge *any* third country removal the Government may pursue in reopened removal proceedings, nor does this voluntary promise amend ICE policy. Dkts. # 16 at 7, 18 at 4:25–5:13. Moreover, in *Nguyen* the court found that due process with regard to threatened third country removal is not satisfied "by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held." No. 2:25-CV-01398-TMC, 2025 WL 2419288 at *18 (W.D. Wash. Aug. 21, 2025) (citing *Aden*, 409 F. Supp. 3d 998 at 1011 (W.D. Wash. 2019)). Therefore, this Court finds petitioner "is likely to succeed on his claim that removal to a third country under ICE's current policy, without meaningful notice and reopening of his removal proceedings for a hearing, would violate due process." *Nguyen*, No. 2:25-CV-01398-TMC, 2025 WL 2419288 at *19 (W.D. Wash. Aug. 21, 2025).

### 2. Release Under *Zadvydas*

Petitioner's request for release from detention under *Zadvydas* is the same relief ultimately sought by his habeas petition. Dkt. # 7. In briefing ahead of this preliminary injunction, the parties disagreed significantly as to the amount of time petitioner has been in custody for the purposes of a *Zadvydas* analysis. *Compare* Dkt. # 16 at 9:4–5 (describing petitioner as having been in custody eight months) *with* Dkt. # 15 at 15:22 (describing petitioner as having been "detained for more than 20 months"). The number of months petitioner has been detained beyond *Zadvydas*'s six-month period of presumptive reasonability is significant to any analysis of petitioner's claims under *Zadvydas*. 533 U.S. 678, 701 (2001). The Court finds this issue will be best resolved "through regular adjudication of the habeas petition itself." *Nguyen*,

PRELIMINARY INJUNCTION - 9

No. 2:25-CV-01398-TMC, 2025 WL 2165995 at * 7 (W.D. Wash. July 30, 2025). Therefore, for the purposes of petitioner's preliminary injunction request only, the Court declines to find likelihood of success on the merits of this issue.

### 3. Punitive Nature of Third Country Removal

Petitioner claims the Government's third country deportation policy is "punitive" and therefore a violation of due process under *Wong Wing v. United States*, 163 U.S. 228, 237 (1896). Dkt. # 15 at 14:15. On the current record, which lacks the specificity and examples regarding third country imprisonment that were present in *Nguyen*, the Court finds that the question of whether the Government's third country removal policy is unconstitutionally "punitive" is unsuitable for evaluation at the preliminary injunction stage. No. 2:25-CV-01398-TMC, 2025 WL 2419288 at * 8, 23–28 (W.D. Wash. Aug. 21, 2025). Therefore, for the purposes of petitioner's preliminary injunction request only, the Court declines to find likelihood of success on the merits of this issue.

### D. Irreparable Harm

Here, as in *Nguyen*, by citing "ICE's own policy" petitioner has:

> [S]hown that he will suffer irreparable harm in the absence of an injunction barring his removal to a third country. It is beyond dispute that Petitioner would face irreparable harm from removal to a third country. *A.A.R.P. v. Trump*, ⸺ U.S. ⸺ ⸺, 145 S. Ct. at 1364, 1367, 221 L.Ed.2d 765 (2025) (detainees with pending habeas petitions facing removal under Alien Enemies Act faced "an imminent threat of severe, irreparable harm"). And Petitioner has demonstrated that his removal to a third country is an "immediate threatened injury[.]" *Caribbean Marine Servs.,* 844 F.2d at 674.

PRELIMINARY INJUNCTION - 10

No. 2:25-CV-01398, 2025 WL 2419288 at *26 (W.D. Wash. Aug. 21, 2025). In addition, "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "When the alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 2004)). Thus, petitioner here has shown that he would suffer irreparable harm if removed to a third country without necessary due process. *See Phaymany*, 2:25-cv-00854-RAJ-MLP (W.D. Wash. Sept. 25, 2025).

### E. Balance of Equities and Public Interest

The final *Winter* factors, the balance of equities and the public interest, merge when the Government is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). As relevant here:

> "There is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009). While there is a countervailing interest in execution of final removal orders, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Nguyen*, 2025 WL 2419288, at *28 (quoting *Ala. Ass'n of Realtors v. Dep't of Health and Human Servs.*, 594 U.S. 758, 766 (2021)).

*Phaymany*, 2:25-cv-00854-RAJ-MLP (W.D. Wash. Sept. 25, 2025). Thus, when looking at the need for petitioner to receive necessary due process prior to any third country removal, the final two *Winter* factors weigh in favor of petitioner with the balance of equities tipping sharply in his favor.

PRELIMINARY INJUNCTION - 11

In addition, the Court finds that under these circumstances it is important to act to preserve its jurisdiction to adjudicate both the present motion for preliminary injunction and the underlying petition. *See Phaymany*, 2:25-cv-00854-RAJ-MLP (W.D. Wash. Sept. 25, 2025). *See also A.A.R.P. v. Trump*, 605 U.S. 91 at 93 (2025) (granting temporary order not to remove class members "in order to preserve our jurisdiction and consider the application."). This finding is supported by this Court's recent experience with an "administrative error" deportation. *See* Dkt. # 14 at 7:25–8:20. *See also* Dkt. # 18 at 5:7–13. If the Court did not enter a preliminary injunction prohibiting petitioner's removal to a third country, the Court could be deprived of its jurisdiction through an "administrative error" deportation notwithstanding the Government's representations that it will provide petitioner some—albeit insufficient, as discussed above—due process.

### F.  Security

A court may issue a preliminary injunction "only if the movant gives security in the amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "[T]he purpose of such a bond is to cover any costs or damages suffered by the government, arising from a wrongful injunction . . . ." *Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000). Here, as in *Gorbach*, "the government did not show that there would be any [costs or damages]." *Id.*, Dkt. # 16 at 18:18–19:10. In addition, petitioner states that he is indigent. Dkt. # 18 at 3:18. Therefore, the Court finds it would not be proper to require that petitioner give security in this matter.

PRELIMINARY INJUNCTION - 12

### III. Conclusion

For all the foregoing reasons, petitioner's motion for preliminary injunction (Dkt. # 15) is GRANTED IN PART AND DENIED IN PART as follows:

> (1) The Court ORDERS that all respondents and all their officers, agents, servants, employees, attorneys, and persons acting on their behalf in concert or in participation with them, are prohibited from removing petitioner to a third country without notice and a meaningful opportunity to respond in compliance with statute and due process in reopened removal proceedings; and
>
> (2) The Court DENIES petitioner's request for a temporary restraining order directing petitioner's immediate release under *Zadvydas*, 533 U.S. 678 (2001) and prohibiting petitioner's removal to any third country under the current "punitive" policy.

Absent a successful motion to modify or resolve this preliminary injunction, it shall remain in effect until the Court issues a final decision on petitioner's habeas petition. Counsel for the federal respondents shall immediately provide notice of this Order to the restrained parties counsel represents. As discussed *supra*, the Court also directs counsel for both parties to make every effort to ensure that respondent Bruce Scott, identified by petitioner as "Warden of Immigration Detention Facility," is notified of this preliminary injunction immediately.

IT IS SO ORDERED.

DATED this 7th day of November, 2025.

Robert S. Lasnik
United States District Judge

PRELIMINARY INJUNCTION - 14